UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROBYN SHEREN,

           Plaintiff,

       -against-

JRP CPA, PLLC, GARY SILKO, CPA,
and JEREMY ROSS-POTEET, CPA,

           Defendants.

Docket No.:

**PLAINTIFF DEMANDS
TRIAL BY JURY**

---

## COMPLAINT

Plaintiff, ROBYN SHEREN, by and through her attorneys, SCHWAB & GASPARINI, PLLC, alleges upon personal knowledge to herself, and upon information and belief as to those remaining matters, the following:

## NATURE OF THE ACTION

1. This action arises from Defendants' repeated and continuing failure to apply a straightforward change in federal tax law, despite possessing actual knowledge of Plaintiff's dissolution of marriage judgment, resulting in years of incorrect tax filings, substantial overpayment of taxes by Plaintiff, and the permanent loss of significant tax refunds once the statutory refund periods expired. Plaintiff's marriage was dissolved by a Judgment entered on January 22, 2019, a date that Defendants knew and repeatedly acknowledged in their records and communications while serving as Plaintiff's tax preparers and advisors. Under federal tax law enacted through the Tax Cuts and Jobs Act of 2017, which governs dissolution of marriage judgments entered after December 31, 2018, maintenance payments are not deductible by the

1

payor and are not includable as taxable income to the recipient. Despite possessing actual knowledge of the operative dissolution of marriage date and maintaining Plaintiff's financial and tax records for the purpose of preparing and filing her annual tax returns, Defendants nevertheless prepared, filed, and caused to be filed multiple federal and state income tax returns that incorrectly treated Plaintiff's maintenance as taxable income, thereby causing Plaintiff to pay taxes that she did not legally owe for several consecutive years. These errors were not isolated or inadvertent but instead formed part of a continuing course of professional negligence occurring within an ongoing accountant–client relationship in which Defendants maintained Plaintiff's tax records, provided tax advice, prepared successive annual tax returns, and repeatedly reaffirmed the same erroneous tax treatment. Plaintiff reasonably relied upon Defendants' professional expertise and continued to retain them to prepare her annual tax filings and advise her regarding the same tax matters. During the course of that continuing representation, Defendants ultimately corrected the maintenance treatment in Plaintiff's 2023 tax return, thereby demonstrating their knowledge that the prior treatment had been incorrect, but failed to disclose that correction to Plaintiff, failed to inform her that earlier returns had been prepared improperly, failed to advise her that amended returns should be filed for prior tax years, and failed to warn her that the statutory deadlines for seeking refunds for those years were imminently expiring. Because Defendants concealed their prior errors while continuing to represent Plaintiff in connection with the same tax matters, Plaintiff remained unaware of the malpractice until after the applicable statutory refund periods for certain years had passed. As a direct and proximate result of Defendants' negligence, continuing representation, and failure to disclose their errors, Plaintiff permanently lost the ability to recover substantial tax refunds for the 2019 and 2020 tax years and sustained additional damages

including but not limited to the overpayment of taxes, expenses incurred in correcting Defendants'

errors, and the payment of professional fees for services that were negligently performed.

## VENUE AND JURISDICTION

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because the action is between a citizen of a foreign state and citizens of a State of the United States, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen of a foreign state, more particularly, the State of Florida.

3. Upon information and belief, Defendants are citizens of the State of New York. To the extent any Defendant is a partnership, limited liability partnership, limited liability company, or other unincorporated entity, such entity is a citizen of each state in which its members or partners are citizens. Upon information and belief, none of the members or partners of such entity are citizens of the same foreign state as Plaintiff.

4. This Court has supplemental jurisdiction over plaintiff's state law claims, pursuant to 28 U.S.C. §1367(a).

5. This Court has personal jurisdiction over Defendants pursuant to N.Y. CPLR §301, inasmuch, as the Defendants reside in, are domiciled in, and/or regularly conduct business within the State of New York and within this District.

6. Venue is proper within this District, pursuant to 28 U.S.C. §1391(b)(1) and (2), as Defendants reside in this District and a substantial part of the events or omissions giving rise to this claim have arisen within this District.

## PARTIES

7.    Plaintiff, ROBYN SHEREN, is a citizen and resident of the State of Florida.

8.    Defendant, JRP CPA, PLLC (hereinafter "JRP"), was at all times hereinafter mentioned, a domestic professional service limited liability company organized and existing under the laws of the State of New York. Defendant JRP maintains a principal place of business at 900 Wheeler Road, Suite 260, Hauppauge, New York 11788.  Upon information and belief, the members of JRP CPA, PLLC are citizens of the State of New York.

9.    Defendant JRP has continuously conducted business in New York and engaged in the business of providing accounting, tax preparation, and related professional services.

10.    Defendant GARY SILKO, CPA is, upon information and belief, was at all times relevant herein, a certified public accountant licensed in New York who provided accounting and tax preparation services to Plaintiff.

11.    Defendant JEREMY ROSS-POTEET, CPA, is, upon information and belief, a certified public accountant licensed in the State of New York who continued and/or assumed responsibility for Plaintiff's accounting and tax matters through the same practice, staff, files, and records previously maintained by or under Defendant GARY SILKO.

12.    At all relevant times, each Defendant acted individually and/or as the agent, partner, employee, principal, or representative of the other Defendants, and each Defendant is jointly and severally liable for the acts and omissions alleged herein.

## BACKGROUND

13.    Plaintiff retained Defendants to provide ongoing professional accounting and tax preparation services, including the preparation and filing of Plaintiff's federal and state income tax

returns and the provision of tax advice regarding the proper treatment of maintenance and related tax consequences.

14.    There was a mutual understanding that Defendants would provide ongoing tax advice and ensure the accuracy of Plaintiff's filings. Defendants' services were not discrete annual engagements, but part of a continuous advisory relationship. Plaintiff relied on Defendants to identify and correct errors affecting prior and future returns.

15.    Plaintiff's marriage was dissolved by a court-stamped Judgment entered on January 22, 2019. Under federal tax law enacted through the Tax Cuts and Jobs Act ("TCJA"), maintenance received pursuant to a dissolution of marriage judgment entered after December 31, 2018, is not taxable income to the recipient.

16.    While preparing Plaintiff's 2018 tax return, Defendant GARY SILKO acknowledged by email dated April 9, 2019, that Plaintiff's dissolution of marriage had been finalized in January 2019, thereby confirming Defendants' early and actual knowledge of the operative dissolution of marriage date.

17.    On or about that same date, Plaintiff received correspondence from her former spouse's attorney advising that her former spouse intended to report $60,000 paid in 2018 as deductible maintenance and inviting cooperation between the parties' accountants in preparing their respective tax returns. Plaintiff provided this information to her accountant for clarification and appropriate tax treatment.

18.    On March 5, 2020, while preparing Plaintiff's 2019 tax return, a representative of Defendants again requested confirmation of the date of Plaintiff's dissolution of marriage. Plaintiff clearly distinguished the date of the judgment from the earlier settlement date and again confirmed that the Judgment dissolving the marriage had been entered on January 22, 2019.

19.     Despite possessing actual knowledge of the judgment date and the governing tax treatment under federal law, Defendants nevertheless prepared, caused to be prepared, and/or advised Plaintiff to file federal and state income tax returns for tax years 2019, 2020, 2021, and 2022 that improperly reported maintenance received by Plaintiff as taxable income.

20.     Defendants' repeated treatment of Plaintiff's maintenance as taxable income after the January 2019 dissolution of marriage finalization was contrary to the governing tax law applicable to Plaintiff's maintenance receipts and fell below the degree of care, skill, and diligence commonly possessed and exercised by reasonably prudent accountants and tax professionals.

21.     Defendants' negligent conduct was not a single isolated event. Rather, Defendants continued to provide accounting and tax services to Plaintiff concerning the same subject matter over successive tax years, using the same practice, staff, files, and records.

22.     Upon information and belief, the accounting practice initially operated under Defendant GARY SILKO through approximately 2020 and was subsequently continued by Defendant JEREMY ROSS-POTEET, who, upon information and belief, retained the same staff, client files, and records while continuing to service Plaintiff's tax matters.

23.     The professional relationship between Plaintiff and Defendants was continuous, ongoing, and uninterrupted, and encompassed the same subject matter, namely, the reporting and tax treatment of Plaintiff's maintenance income.

24.     In or about January 2024, Plaintiff again provided Defendants with her court-stamped dissolution of marriage decree when seeking advice regarding eligibility for health insurance subsidy through the Affordable Care Act marketplace.

25.     Despite this additional notice and opportunity to review the governing judgment dissolving the marriage, Defendants did not advise Plaintiff that her prior tax returns had

6

misreported maintenance as taxable income and did not recommend that amended returns be filed for the affected years.

26.    Plaintiff did not discover Defendants' error until approximately April 2025, when she received an unexpected tax refund during the preparation of her 2024 tax return and learned for the first time that maintenance was no longer being treated as taxable income.

27.    Plaintiff subsequently learned that Defendants had prepared and filed Plaintiff's 2023 tax return in or about April 2024 using the correct tax treatment for maintenance.

28.    Defendants did not inform Plaintiff that the tax treatment of maintenance had been changed in the 2023 return, that the prior returns for tax years 2019 through 2022 had been prepared incorrectly, that amended returns should be filed for those earlier years, or that the statutory deadlines for filing amended returns were approaching expiration.

29.    Defendants also failed to provide Plaintiff with a copy of the 2023 tax return at the time it was prepared and filed.

30.    At or about the time Defendants made this undisclosed correction in the 2023 return, the statutory deadline for amending Plaintiff's 2020 tax return was about to expire. After discovering Defendants' error, Plaintiff undertook efforts to correct the prior filings, including preparing and submitting amended tax returns for tax years 2019 through 2022.

31.    The amendments for the years 2021 and 2022 were prepared by Defendants, only after Plaintiff discovered the errors in April 2025 and, after consulting a tax attorney, insisted that the amendments be filed before the IRS statute deadline.

32.    At no time did Defendants ever offer to file the amendments. Plaintiff repeatedly requested that the amendments be completed. The 2021 amendment was submitted at the April

7

2025 deadline. The 2022 amendment required additional follow-up after plaintiff had been initially told by Defendants that it had been submitted, when it in fact had not yet been processed.

33.     The amended returns for tax years 2021 and 2022 were accepted and refunds were issued, with total refunds exceeding Two Hundred Thousand ($200,000.00) Dollars.

34.     However, the statutory deadlines to amend the 2019 and 2020 tax returns had already expired and those returns can no longer be amended to recover the taxes improperly paid.

35.     But for Defendants' failure to disclose their errors and advise Plaintiff to file amended returns before the statutory deadlines expired, Plaintiff would have timely amended those returns and recovered the overpaid taxes for the 2019 and 2020 tax years.

36.     As a direct and proximate result of Defendants' negligence and omissions, Plaintiff sustained damages including, but not limited to, tax overpayments, the permanent loss of recoverable refunds, loss of the use of money, professional fees incurred to investigate and correct the errors, interest, and attorneys' fees to the extent recoverable.

37.     Defendants continued to provide accounting and tax preparation services to Plaintiff concerning the same tax matters at issue, including the reporting and tax treatment of Plaintiff's maintenance, for each successive tax year from 2018 through at least the preparation of Plaintiff's 2024 tax return.

38.     At no time prior to April 2025 did Defendants inform Plaintiff that their professional relationship concerning her tax filings had ended or that Plaintiff should seek alternative accounting advice regarding those matters.

39.     Plaintiff reasonably relied upon Defendants to prepare her annual tax returns, maintain her tax records, and advise her concerning the proper tax treatment of her maintenance.

40.    While continuing to provide these services, Defendants prepared Plaintiff's 2023 tax return in or about April 2024 using the correct non-taxable treatment of maintenance.

41.    Defendants did not disclose to Plaintiff that this treatment differed from the treatment used in the prior returns prepared by Defendants for tax years 2019 through 2022. Defendants also did not advise Plaintiff that those prior returns had been prepared incorrectly or that amended returns should be filed to recover taxes previously overpaid.

42.    At the time Defendants made this undisclosed correction, the statutory deadline for amending Plaintiff's 2020 tax return was approaching expiration. Plaintiff continued to rely upon Defendants' accounting services and had no reason to suspect that the tax treatment repeatedly applied by Defendants over multiple years was incorrect.

43.    Plaintiff did not discover Defendants' errors until approximately April 2025.

44.    Plaintiff did not possess the specialized tax training or knowledge necessary to recognize that Defendants had incorrectly reported her maintenance as taxable income. Plaintiff reasonably relied upon Defendants, as licensed accounting professionals, to correctly apply governing federal tax law when preparing and filing her tax returns. The incorrect tax treatment applied by Defendants was not obvious from the face of the returns and would not have been apparent to a layperson without specialized tax knowledge. Accordingly, Plaintiff had no reason to suspect that the returns prepared by Defendants contained errors.

45.    Had Plaintiff been timely advised that Defendants had incorrectly reported her maintenance as taxable income, Plaintiff would have promptly filed amended returns and recovered the overpaid taxes for the affected years.

46.    The professional relationship between Plaintiff and Defendants was continuous and concerned the same subject matter, namely the preparation of Plaintiff's tax returns and the

reporting of her maintenance income. Plaintiff continued to rely upon Defendants' professional advice and services in preparing her annual tax filings. Under New York law, the statute of limitations for professional malpractice is tolled during such continuous representation concerning the same subject matter.

47.    Plaintiff did not retain any other accountant during this period and Defendants remained solely responsible for the preparation of her tax returns.

48.    Defendants continued to provide accounting and tax preparation services to Plaintiff after preparing the 2023 tax return, including services related to the preparation of Plaintiff's 2024 tax return. Throughout this period, Plaintiff continued to rely upon Defendants as her accountants with respect to the preparation of her annual tax returns and the proper tax treatment of her maintenance.

49.    Defendants never advised Plaintiff that their professional engagement concerning the preparation of her tax returns had terminated.

## FIRST CLAIM

### Accounting Malpractice

50.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

51.    At all relevant times, Defendants acted as Plaintiff's accountants and tax return preparers and, as such, owed Plaintiff a duty to exercise that degree of care, skill, diligence, and professional competence commonly possessed and exercised by reasonably prudent certified public accountants under the same or similar circumstances.

52.    This duty included, among other things, the obligation to correctly interpret and apply governing federal and state tax law; review and properly utilize client-provided

documentation; prepare tax returns that accurately reflect applicable law; provide competent and timely tax advice; identify and correct errors in previously prepared tax returns; advise clients of the availability and necessity of filing amended returns when appropriate; and inform clients of statutory deadlines affecting their rights and the recovery of tax refunds.

53.    Defendants breached their professional duties to Plaintiff by, among other things, failing to correctly determine and apply the governing federal tax treatment of maintenance following Plaintiff's dissolution of marriage which was finalized by a Judgment dated January 22, 2019; failing to review and act upon the judgment and related communications provided by Plaintiff; failing to advise Plaintiff of the correct tax treatment; and repeatedly preparing, filing, or causing to be filed tax returns that incorrectly reported Plaintiff's maintenance as taxable income..

54.    At all relevant times, the tax treatment of maintenance arising from judgments dissolving marriages entered after December 31, 2018, was clearly established under federal law pursuant to the Tax Cuts and Jobs Act and was not subject to reasonable dispute..

55.    Notwithstanding the clarity of the governing law, Defendants failed to correctly apply the law to Plaintiff's tax filings.

56.    Defendants had actual knowledge that Plaintiff's judgment dissolving the marriage was entered on January 22, 2019, as evidenced by their acknowledgment of same in April 2019, Plaintiff's written confirmation of the dissolution of marriage date in March 2020, and Plaintiff's resubmission of judgment to Defendants in January 2024.

57.    Despite possessing this information, Defendants repeatedly prepared, filed, or caused to be filed Plaintiff's tax returns for the 2019, 2020, 2021 and 2022 tax years treating maintenance as taxable income to Plaintiff.

58.    Each such filing constituted a departure from accepted standards of accounting practice and a failure to exercise reasonable professional care.

59.    Defendants' negligence was not limited to the initial misapplication of the law but included a continuing failure over multiple years to recognize, investigate, and correct their own errors while continuing to provide accounting and tax services to Plaintiff concerning the same subject matter.

60.    Defendants further deviated from accepted professional standards by failing to review prior-year filings for accuracy and consistency; failing to identify the repeated mischaracterization of Plaintiff's maintenance income; failing to take corrective action after receiving confirming information regarding the dissolution of marriage date; and failing to implement procedures to prevent the recurrence of the same error in successive tax filings.

61.    Upon information and belief, Defendants knew, or in the exercise of reasonable professional care should have known, that the tax treatment applied to Plaintiff's maintenance was erroneous.

62.    Defendants' negligence was compounded by their failure to take timely corrective action after their errors should have been discovered.

63.    Defendants further breached their duties by failing to advise Plaintiff, at any time prior to April 2025, that her previously filed returns were incorrect; that she had overpaid taxes; that amended returns should be filed; and that her ability to recover refunds was subject to strict statutory deadlines.

64.    In or about April 2024, Defendants prepared Plaintiff's 2023 tax return using the correct non-taxable treatment of maintenance, thereby demonstrating their recognition of the proper legal standard. Notwithstanding that recognition, Defendants failed to inform Plaintiff that

the prior returns for tax years 2019 through 2022 had been prepared incorrectly, failed to disclose the reason for the change in treatment, and failed to recommend that amended returns be filed to recover the overpaid taxes.

65.    Defendants' failure to disclose and act upon their own correction constituted an additional departure from accepted standards of professional accounting practice. Defendants' negligence and departures from accepted standards of accounting and tax practice were the direct and proximate cause of Plaintiff's injuries and damages. But for Defendants' failure to timely identify and disclose their errors and advise Plaintiff to file amended returns, Plaintiff would have timely amended her 2019 and 2020 tax filings and recovered the refunds to which she was legally entitled.

66.    As a direct and proximate result of Defendants' malpractice, Plaintiff has sustained damages in an amount to be determined at trial, but believed to exceed the jurisdictional minimum of this Court, including but not limited to overpaid taxes, the permanent loss of recoverable refunds, corrective accounting and tax preparation expenses, interest, and attorneys' fees to the extent permitted by law.

## SECOND CLAIM

### Breach of Fiduciary Duty

67. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

68. At all relevant times, Defendants stood in a relationship of trust and confidence with Plaintiff, thereby creating fiduciary duties that extended beyond the duty of ordinary care.

69. By virtue of their role as Plaintiff's long-standing accountants and tax advisors, Defendants possessed superior knowledge, specialized expertise, and exclusive access to Plaintiff's financial information, tax records, and governing documents, including her dissolution of marriage judgment.

70. Plaintiff reposed trust and confidence in Defendants to act in her best interests, to provide complete and accurate advice, and to disclose material facts affecting her financial rights and obligations.

71. Defendants, in turn, undertook and accepted fiduciary obligations requiring them to exercise the utmost good faith, loyalty, candor, and full and fair disclosure in all matters within the scope of their engagement.

72. These fiduciary duties include, but were not limited to, the obligations to fully and accurately advise Plaintiff regarding the tax consequences of her dissolution of marriage; properly interpreting and applying governing tax law; reviewing and acting upon material documents provided by Plaintiff; correcting known errors in prior work; disclosing any mistakes, inaccuracies, or changes in tax treatment; advising Plaintiff of her right to file amended returns; warning Plaintiff of applicable statutory deadlines; and refraining from withholding material information necessary for Plaintiff to protect her financial interests.

73.    Defendants breached these fiduciary duties through a sustained course of wrongful conduct, including but not limited to failing to disclose that they had misapplied clearly established tax law concerning post-2018 maintenance; failing to inform Plaintiff that her prior tax returns had been incorrectly prepared; knowingly changing the treatment of maintenance in the 2023 tax return while concealing that change from Plaintiff; failing to provide Plaintiff with a copy of the 2023 return reflecting the corrected treatment; failing to advise Plaintiff that amended returns should be filed for prior tax years; failing to warn Plaintiff that the statutory deadlines to recover refunds for 2019 and 2020 tax years were about to expire; and continuing to render services in a manner that perpetuated Plaintiff's reliance while withholding material information necessary for her to make informed decisions.

74.    Upon information and belief, Defendants recognized the error in their prior tax treatment of Plaintiff's maintenance when preparing Plaintiff's 2023 tax return in or about April 2024 and corrected the tax treatment in that filing. Despite recognizing the error, Defendants failed to disclose to Plaintiff that the prior returns for tax years 2019 through 2022 had been incorrectly prepared, failed to explain the reason for the change in tax treatment, and failed to recommend that Plaintiff file amended returns to recover the taxes she had overpaid.

75.    Defendants' misconduct was not merely negligent, but constituted a conscious and knowing failure to disclose material facts in the face of a clear duty to do so. Defendants, in this regard, failed to provide Plaintiff with a copy of the 2023 tax return reflecting the corrected treatment or otherwise notify her that a material change had been made

76.    Upon information and belief, Defendants were aware, at least by the time of the preparation of the 2023 tax return, that their prior treatment of Plaintiff's maintenance had been erroneous and that Plaintiff had sustained financial harm as a result.    At the time Defendants

corrected the tax treatment in the 2023 return, they knew or should have known that the statutory deadlines for amending earlier returns, particularly the 2019 and 2020 returns, were approaching expiration.

77.     Notwithstanding this knowledge, Defendants failed to advise Plaintiff of the impending deadlines or the need to take corrective action to protect her financial interests..

78.     Defendants' silence and omissions deprived Plaintiff of the opportunity to timely mitigate her damages and directly resulted in the permanent loss of her right to recover substantial tax refunds for the 2019 and 2020 tax years.

79.     Plaintiff reasonably relied on Defendants' fiduciary obligations, their superior knowledge, and their continued provision of professional services, and had no reason to suspect that material information was being withheld.

80.     Defendants' breach of fiduciary duty constitutes misconduct that is separate and distinct from ordinary professional negligence, in that it involves disloyalty, lack of candor, and the intentional or reckless withholding of material information.

81.     Upon information and belief, Defendants withheld this information in order to avoid professional embarrassment, scrutiny, or potential liability arising from their prior errors.

82.     As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiff has sustained damages, including but not limited to lost tax refunds, financial losses, consequential damages, professional fees, and other economic harm.

83.     By reason of the foregoing, Plaintiff is entitled to recover all damages resulting from Defendants' breach of fiduciary duty, together with such other and further relief as the Court deems just and proper.

## THIRD CLAIM

### Negligent Misrepresentation

84.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

85.     At all relevant times, Defendants were engaged in the business of providing accounting and tax preparation services and held themselves out as licensed certified public accountants possessing specialized knowledge and expertise in federal and state tax law.

86.     In the course of their professional engagement, Defendants provided Plaintiff with tax preparation services and professional advice regarding the reporting and tax treatment of her maintenance and related financial matters.

87.     By preparing Plaintiff's tax returns and advising Plaintiff concerning the tax treatment of her maintenance, Defendants supplied information for the guidance of Plaintiff in the conduct of her financial and tax affairs.

88.     A special relationship of trust and confidence existed between Plaintiff and Defendants by virtue of their long-standing accountant–client relationship, Defendants' superior knowledge and expertise in tax law, and Plaintiff's reliance on Defendants to provide accurate professional advice and tax preparation services.

89.     In the course of that relationship, Defendants negligently provided false and misleading information by repeatedly representing, through the preparation and filing of Plaintiff's tax returns, that maintenance received by Plaintiff following her January 2019 dissolution of marriage was taxable income.

90.     Defendants knew, or in the exercise of reasonable professional care should have known, that such information was incorrect under the governing provisions of the Tax Cuts and Jobs Act applicable to dissolution of marriage judgments entered after December 31, 2018.

91.     Defendants further provided misleading information by failing to disclose that their prior tax treatment of Plaintiff's maintenance had been erroneous and by failing to inform Plaintiff that the treatment had been changed when preparing Plaintiff's 2023 tax return.

92.     Plaintiff reasonably relied upon Defendants' professional representations and tax filings in reporting her income and paying taxes for the 2019, 2020, 2021, and 2022 tax years.

93.     Plaintiff lacked specialized tax training and reasonably relied upon Defendants, as licensed accounting professionals, to correctly interpret and apply governing federal tax law when preparing and filing her tax returns.

94.     As a direct and proximate result of Defendants' negligent misrepresentations and omissions, Plaintiff paid taxes that she did not owe and was deprived of the opportunity to timely amend her tax returns and recover refunds for certain tax years.

95.     Plaintiff's reliance on Defendants' negligent misrepresentations caused her to suffer damages, including but not limited to overpaid taxes, the permanent loss of recoverable refunds, corrective accounting and tax preparation expenses, interest, and other economic losses.

96.     By reason of the foregoing, Plaintiff is entitled to recover all damages resulting from Defendants' negligent misrepresentations, together with such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor
and against Defendants as follows:

(a) Awarding Plaintiff compensatory damages in an amount to be determined at trial
sufficient to fully compensate Plaintiff for all losses proximately caused by Defendants'
misconduct, including but not limited to lost tax refunds, overpaid taxes, loss of the use
of money, interest associated with such overpayments, and other consequential
economic damages;

(b) Awarding Plaintiff all costs and expenses incurred in investigating and correcting
Defendants' errors, including additional accounting and tax preparation expenses and
other corrective professional fees;

(c) Awarding Plaintiff the costs and disbursements of this action, including
reasonable attorneys' fees to the extent permitted by law;

(d) Awarding Plaintiff pre-judgment and post-judgment interest as permitted by law;

(e) Granting such equitable relief as may be necessary to prevent Defendants from
benefiting from their misconduct; and

(f) Awarding such other and further legal and equitable relief as the Court deems just,
proper, and appropriate.

Dated:  White Plains, New York
        April 30, 2026

Respectfully submitted,

**SCHWAB & GASPARINI, PLLC**

BY: _____

**LOUIS U. GASPARINI (LG2655)**
lgasparini@schwabgasparini.com
Attorneys for Plaintiff
ROBYN SHEREN
222 Bloomingdale Road, Suite 200
White Plains, New York 10605
(914) 304-4353
File No. 100.178

19